## SPEEDWAY WATER CO. v. UNITED STATES.

### No. 6661.

Circuit Court of Appeals, Seventh Circuit.

Dec. 20, 1938.

Ray H. Briggs, of Indianapolis, Ind. (Homer Hendricks, of Washington, D. C., of counsel), for appellant.

Howard P. Locke, of Washington, D. C., James W. Morris, Asst. Atty. Gen., Sewall Key and Paul R. Russell, Sp. Assts. to Atty. Gen., and Val Nolan, U. S. Atty., and B. Howard Caughran, Asst. U. S. Atty., both of Indianapolis, Ind., for the United States.

Before SPARKS and TREANOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Plaintiff, having sued to recover additional income tax assessed against and paid by it for the year 1930, appeals from a judgment in favor of defendant.

Plaintiff is a water company in the Town of Speedway, which, in 1929, entered into a contract with the town whereby the company agreed to sell and transfer its water works system and plant to the town in exchange for $72,000 in face value of water revenue bonds, secured by a statutory lien upon the property transferred and the revenue to be derived therefrom. The sale and transfer were ratified by the Indiana Public Service Commission and, upon receipt of the conveyance, the town issued and delivered to plaintiff the bonds. These mature serially, beginning in 1930 and ending in 1951.

Plaintiff accounted for no gain from the transaction; and the commissioner assessed an additional income tax because of net profit, in the sum of $5640.14. The sole question for decision is whether the transaction amounted to a sale wherein the plaintiff must account for realized profit as income or whether it amounted to a reorganization with consequent exemption of any gain from taxation. Plaintiff insists the court erred in characterizing it as a sale.

Under Sections 112, 113 and 115 of the Revenue Act of 1928, c. 852, 45 Stat. 816, 26 U.S.C.A. §§ 112, 113, 115, notes, a reorganization means, (a), a merger or consolidation (including the acquisition by one corporation of substantially all the properties of another corporation), (b), a transfer by a corporation of all or a part of its assets to another corporation, if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, (c), a recapitalization, or, (d), a mere change in identity, form, or place of organization, however effected.

Control is defined as the ownership of at least 80 per cent of the voting stock and at least 80 per cent of the total number of shares of all other classes of stock of the corporation. A party to a reorganization, by the terms of the act, includes a corporation resulting from a reorganization and both corporations in case of acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.

The Water Company adopted a resolution to "sell and transfer" its physical assets for the bonds. It retained its intangible assets, other than unaccrued water rentals. When the bonds were received, it distributed them to its stockholders, who thereupon surrendered their stock. The corporation was kept alive by the continued existence of 5 shares of stock but was not thereafter engaged in any activities. The bonds authorized by the ordinance of the town and received by plaintiff were not obligations of the municipality but were statutory bonds, issued in pursuance of the Indiana statutes, providing for payment out of water rentals and obligating the town so to operate the plant as to produce sufficient rentals to meet the bonds as they mature, and secured by a statutory lien upon the property transferred.

We find nothing in the statute to indicate that Congress intended that a municipal corporation should be included within "parties to a reorganization." Indeed, it seems apparent that the purpose of the exemption provisions included in the legislation was to remove an impediment to corporate readjustments and to prevent the taxation of purely fictitious gains. Mead Coal Co. v. Commissioner, 4 Cir., 72 F.2d 22. A municipal corporation is not engaged in business in the ordinary sense of

638

the term and, though its activity in conducting a water plant may be denominated as exercise of a proprietary function rather than one governmental in character, such an activity is one permitted by the state legislature for the promotion and protection of the welfare of the citizens of the community; and partakes of none of the significant elements of an industrial, financial or other private business activity. Mergers, consolidations, reorganizations are, in the ordinary significance of those terms, confined to private corporations and the debates of Congress and the words of the statute disclose not the slightest evidence of intent that a sale of a water plant to a municipal corporation should be included in the exemption from taxes provided in case of reorganization of corporations.

■ Furthermore we find lacking some of the essential elements of a reorganization. The parties designate the transaction as one of sale and, though their terminology is not conclusive as to its legal character, it is to be considered in determining whether statutory exemption exists. Under Clause (A) of the statute, section 112, (i) (1), 26 U.S.C.A. § 112 note, acquisition by one corporation of substantially all of the property of another corporation, may constitute a reorganization, but admittedly not every such acquisition amounts to a reorganization. Clause (B) indicates clearly an intent that a transfer of all or a part of one corporation's assets to another shall not be considered a reorganization unless immediately after the transfer, the transferor or its stockholders or both are in control of the corporation to which the assets are transferred. In other words, Congress has prescribed, as a prerequisite to the existence of reorganization, the condition that an interest in the transferee corporation shall be retained by the transferor. Discussing these two clauses, the court, in Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428, said [page 260]: "The words within the parentheses may not be disregarded. They expand the meaning of 'merger' or 'consolidation' so as to include some things which partake of the nature of a merger or consolidation but are beyond the ordinary and commonly accepted meaning of those words—so as to embrace circumstances difficult to delimit but which in strictness cannot be designated as either merger or consolidation. But the mere purchase for money of the assets

of one company by another is beyond the evident purpose of the provision, and has no real semblance to a merger or consolidation. Certainly, we think that to be within the exemption the seller must acquire an interest in the affairs of the purchasing company more definite than that incident to ownership of its short-term purchase-money notes." And in the later case of Helvering v. Minnesota Tea Co., 296 U.S. 378, 56 S.Ct. 269, 80 L.Ed. 284, the court added [page 272]: "And we now add that this interest must be definite and material; it must represent a substantial part of the value of the thing transferred. This much is necessary in order that the result accomplished may genuinely partake of the nature of merger or consolidation."

Here the vendor acquired no interest in the purchasing municipality more definite than that incidental to the ownership of bonds which were not the obligation of the transferee. By the transfer, plaintiff gained no right to have a voice in the town's affairs. Such an interest it could not acquire. It received no obligation of the transferee other than the right under the statute to insist that the city operate the plant and recover and protect rentals therefrom in accordance with its statutory duty.

■ Nor do we believe that the fact that, instead of receiving money, plaintiff received bonds changes the character of the transaction. True, the dates of realization in cash were delayed until the maturity of the bonds, but to say that this distinguishes the transaction is to say it is different from that before the court in Pinellas Ice & Cold Storage Co. v. Commissioner, supra, where the security received was short-term purchase money notes. As suggested by the government, the transaction here was in the nature of an installment sale wherein title is reserved as security for payments to be made in installments. As said in Pinellas Ice & Cold Storage Co. v. Commissioner, supra, "It would require clear language to lead us to conclude that Congress intended to grant exemption to one who sells property and for the purchase price accepts well secured, short-term notes (all payable within four months), when another who makes a like sale and receives cash certainly would be taxed. We can discover no good basis in reason for the contrary view and its acceptance would make evasion of taxation very easy. In substance the petitioner sold

for the equivalent of cash; the gain must be recognized." That court approved Cortland Specialty Co. v. Commissioner, 2 Cir., 60 F.2d 937, in which, after discussing various types of reorganization, the court defined one essential characteristic of each as follows [page 939]: "In each case interests of the stockholders and creditors of any company which disappears remain and are retained against the surviving or newly created company." In view of lack of this essential feature, it follows that no reorganization occurred.

The judgment is affirmed.