## COMMISSIONER OF INTERNAL REVENUE v. NEUSTADT'S TRUST et al.

### No. 44.

Circuit Court of Appeals, Second Circuit.

Nov. 16, 1942.

Samuel O. Clark, Jr., Asst. Atty. Gen.; Sewall Key, Samuel H. Levy, and Edward H. Hammond, Sp. Assts. to Atty. Gen., for petitioner.

Harry Silverson, of New York City (Proskauer, Rose, Goetz & Mendelsohn and Wilbur H. Friedman, all of New York City, of counsel), for respondents.

Before L. HAND, SWAN and CHASE, Circuit Judges.

SWAN, Circuit Judge.

In 1937 the taxpayers, trustees of a testamentary trust for the benefit of Agnes Neustadt, exchanged their holdings of 20 year 6 per cent. debentures of Paramount Pictures, Inc., for a like face amount of 10 year 3¼ per cent. convertible debentures of the same company, pursuant to a formal offer of exchange addressed by the company to all holders of the 20 year debenture bonds. The commissioner contended that this resulted in a taxable gain. The taxpayers claimed, and the Tax Court held, that no taxable gain was recognizable because the transaction constituted an exchange of securities in pursuance of a plan of reorganization.

■ The correctness of this conclusion depends upon section 112(b) (3) of the Revenue Act of 1936, 49 Stat. 1678, 26 U.S.C.A. Int.Rev.Code, § 112(b) (3), which reads as follows: "No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation * * *."

The first question is whether the debentures are "securities" within the meaning of this section. The word is used in contrast to "stock"; it necessarily refers to bonds of some sort, since bonds are the most usual, if not the only, form of corporate securities to contrast with stock. Conceivably the word might be construed to include mortgage bonds but to exclude debentures. But it is usual financial practice to speak of debentures as "securities" and the term should be given its ordinary meaning. In Helvering v. Watts, 296 U.S. 387, 56 S.Ct. 275, 80 L.Ed. 289, bonds with a maximum maturity of seven years were held to be "securities" within the corresponding provision of the Revenue Act of 1924, 26 U.S.C.A. Int.Rev.Acts page 4. We do not understand that the authority of this case has been destroyed by the subsequent decision in LeTulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355. There it was held that continuity of proprietary interest must be found if the transaction is to be deemed within the definition of reorganization contained in section 112(i) (1) (A) of the 1928 Act, 26 U.S.C.A. Int. Rev.Acts, page 379, and that a transfer of all the assets of one corporation to another in exchange for cash and bonds of the latter did not fall within such definition. It was not held that an exchange of bonds for bonds pursuant to a plan of reorganization is not an exchange of "securities" within the meaning of section 112 (b) (3). See Paul, Studies in Federal Tax, 3rd series, 1940, pp. 100–102. We think the debentures involved in the case at bar are "securities" within that section.

■ It remains to determine whether they were exchanged pursuant to a plan of reorganization and this turns on whether the exchange amounts to a "recapitalization," as that word is used in section 112 (g). This section declares: "(1) The term 'reorganization' means * * * (E) a 'recapitalization' * * *". 26 U. S.C.A. Int.Rev.Code § 112(g) (1) (E). It is not disputed that the corporation's offer to its old debenture holders constituted a plan of reorganization if there was a "recapitalization." This term, which has been in the tax law since 1921, has never been defined in the Revenue Acts. Nor have the Treasury Regulations attempted any definition except by way of illustration. See Treas.Reg. 86 and 94, Art. 112(g)-2. In Helvering v. Southwest Consolidated Corp., 315 U.S. 194, 202, 62 S.Ct. 546, 552, 86 L.Ed. 789, Mr. Justice Douglas remarked that "recapitalization" contemplates a "reshuffling of a capital structure within the framework of an existing corporation." But this advances solution of the problem only by substituting the necessity of defining the phrase "a capital structure" instead of the word "recapitalization." The commissioner contends that

only a change in authorized or outstanding capital stock of a corporation can properly be denominated a recapitalization or a reshuffling of the capital structure. He describes an exchange of old debentures for new debentures in the same corporation as a mere refinancing operation. In support of this view reference is made to definitions suggested by certain commentators. Berle, Studies in Law of Corporation Finance, 1928, p. 68; 1940 C. C. H., Standard Federal Tax Service, Vol. I, par. 0189. But in common financial parlance the long term funded debt of a corporation is usually regarded as forming part of its capital structure. Instances of such usage may be found in Graham & Dodd, Security Analysis, 1934, p. 461; Kraft & Starkweather, Analysis of Industrial Securities, 1930, pp. 153, 154; Paul & Mertens, Law of Fed. Inc. Taxation, 1934 Vol. 2, p. 208; Fletcher, Cyclopedia on Corporations, 1938 Ed. Vol. 15, § 7215. The Security and Exchange Commission has required the funded debt of a corporation to be listed under the caption of "capital securities." The Interstate Commerce Commission treats funded debt as part of the corporate capital structure. St. Louis, San Francisco Ry. Co. Reorganization, 240 I.C.C. 383, 406; see also Stuart v. Utility Investing Corp., 3 Cir., 78 F.2d 279, 280. A court is justified in believing that when Congress employs in a tax law words having a well defined meaning in the business world, it used them with that meaning in the absence of clear evidence to the contrary.

Deputy v. du Pont, 308 U.S. 488, 498, 60 S.Ct. 363, 84 L.Ed. 416. There is no evidence to the contrary. On the other hand the purpose of the statutory nonrecognition of gain or loss from reorganization transactions, favors ascribing to the word "recapitalization" a broad rather than a restricted meaning. Such purpose, as indicated by the Congressional reports printed in the margin,[1] was apparently twofold: To encourage legitimate reorganizations required to strengthen the financial condition of a corporation, and to prevent losses being established by bondholders, as well as stockholders, who have received the new securities without substantially changing their original investment. The transaction in the case at bar meets both of these tests. By changing the interest rate and date of maturity of its old bonds and adding a conversion option to the holders of the new, the corporation could strengthen its financial condition, while the bondholders would not substantially change their original investments by making the exchange. "Recapitalization" seems a most appropriate word to describe that type of reorganization and it is the very kind of transaction where Congress meant the recognition of gain or loss to be held in suspense until a more substantial change in the taxpayer's original investment should occur. We hold that the exchange of securities was made pursuant to a plan of "recapitalization."

Order affirmed.

---

[1] Report of Ways and Means Committee (73rd Cong., 2d Sess., H. Rept. 704, p. 14) relating to the 1934 Act:

" * * * [Section 112(g) (1)] will limit reorganizations to (1) statutory mergers and consolidations; (2) transfers to a controlled corporation, 'control' being defined as an 80-percent ownership; and (3) changes in the capital structure or form of reorganization.

"By these limitations the committee believes that it has removed the danger that taxable sales can be cast into the form of a reorganization while at the same time, legitimate reorganizations, required in order to strengthen the financial condition of the corporation, will be permitted. Furthermore, the retention of the other reorganization provisions will prevent large losses from being established by bondholders and stockholders who receive securities in a newly organized enterprise which are substantially the same as their original investments."

Report of the Senate Finance Committee (73d Cong., 2d Sess., S. Rept. 558, p. 17) relating to the 1934 Act:

" * * * If the reorganization provisions were omitted from the bill, many stockholders and bondholders could take large losses, although they might retain substantially their former interests in the enterprise. Hence the Treasury has little or nothing to gain by the elimination of these provisions, while, on the other hand, some legitimate and desirable business readjustments would be prevented."