**EMERY v. COMMISSIONER OF IN-
TERNAL REVENUE.**

No. 67, Docket 20713.

Circuit Court of Appeals, Second Circuit.

Jan. 30, 1948.

.C. Walter Randall, Jr., of Philadelphia, Pa. (Saul, Ewing, Remick & Saul, of Philadelphia, Pa., of counsel), for petitioner.

Theron Lamar Caudle, Helen R. Carloss, George A. Stinson, and Morton K. Rothschild, all of Washington, D. C., for respondent.

Before L. HAND, CHASE, and FRANK, Circuit Judges

FRANK, Circuit Judge.

There are two issues which this court must decide: First, was there a taxable gain at all, under § 112(a) [2] of the Internal Revenue Code and Treasury Regulations III, § 29.111-1? [3]   Second, was the exchange one in which no gain was recognizable under §§ 112(b) (3) [4] and 112(g) (1) (E) [5] as an exchange of securities in pursuance of a plan of reorganization.

■ 1. Under the statute and regulations, there will be a gain or loss realized on the exchange of property "for other property differing materially either in kind or in extent." We think that here the new bonds did differ materially from the old. The interest rate of the new bonds was substantially less after the call dates of the old bonds; the new bonds matured from one to twenty-three years earlier than the old bonds; and the period during which the city optionally might call in the bonds was shortened. The reduced call period diminished the opportunity of the city to take advantage of most favorable · interest rates and dollar values, but that disadvantage was offset for the city by a substantial reduction of interest during that period.   Under the circumstances the investing public appeared to be benefited by having its funds tied up in the hands of the city for a shorter time.   That the public considered the difference material is shown by the fact that the market value of the new bonds was higher than that of the old bonds which were still outstanding when the exchange was complete.

Petitioner argues that this case should be controlled by our decision in City Bank Farmers Trust Co. v. Hoey, 2 Cir., 138 F. 2d 1023, affirming per curiam the District Court decision in S.D.N.Y., 52 F.Supp. 665, and by a decision of the Sixth Circuit in Commissioner v. Motor Products Corporation, 142 F.2d 449, affirming per curiam the decision of the Board of Tax Appeals in 47 B.T.A. 983.

We do not believe that the exchange of Detroit bonds provides a controlling parallel.   If the test be that the exchange must have "something * * * really different from what he theretofore had," [6] we think a showing that the new bonds brought

[2] Section 112(a) reads, "*General rule.* Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section."

[3] Section 29.111-1, TR 111, reads, in part, "Except as otherwise provided, the Internal Revenue Code regards as income or as loss sustained, the gain or loss realized from the conversion of property into cash, or from the exchange of property for other property differing materially either in kind or in extent * * *"

[4] Section 112(b) (3) reads, "*Stock for stock on reorganization.* No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

[5] Section 112(g) (1) reads, "The term 'reorganization' means (A) a statutory merger or consolidation, or (B) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation, or (C) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of substantially all the properties of another corporation, but in determining whether the exchange is solely for voting stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded, or (D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred, or (E) a recapitalization, or (F) a mere change in identity, form, or place of organization, however effected."

[6] Weiss v. Stearn, 265 U.S. 242, 254, 44 S.Ct. 490, 492, 68 L.Ed. 1001, 33 A. L.R. 520.

more in the market than the old is as good an indication as we can ask that they were something different. The market differential was present in the case at bar; it was not present in the Detroit bond cases. We have here, therefore, an exchange of bonds which were not only legally different, but which actually had a different financial value. Moreover, the difference in yield was not inconsequential.[7] We think this is an exchange on which a gain is recognized under § 112(a), and not merely new evidence of an old obligation.[8]

2. Petitioner argues that, quite apart from whether there was an exchange for substantially different property, the refunding operation of the municipal corporation of Philadelphia was a recapitalization within the meaning of that term as used in § 112(g) (1) (E) of the Internal Revenue Code, and that, accordingly, the exchange was one in which no gain was recognizable for tax purposes under the reorganization provisions of § 112(b) (3).

Had the refunding in question been done by a private stock corporation, the exchange would have been a recapitalization and exempt as a reorganization under the above sections. Commissioner v. Neustadt's Trust, 2 Cir., 131 F.2d 528; United Gas Improvement Co. v. Commissioner, 3 Cir., 142 F.2d 216. We think, however, that the fact that these bonds were issued by a municipal corporation renders those decisions inapplicable here.[9] We think that we would do violence to the overall purpose of the sections of the Internal Revenue Code on reorganization to extend their scope to include such refunding by municipal corporations. Section 112(g), defining reorganizations, contains six subsections, of which five could apply only to reorganizations of private stock corporations. Nothing in the legislative history of that section would indicate that Congress ever had any intention of including municipal refunding operations within its scope, or, indeed, ever considered such operations.[10] In the long history of litigation which has accompained the administration of that section, we find only one case where its applicability to municipal corporations was commented upon by the courts. In Speedway Water Co. v. United States, 7 Cir., 100 F.2d 636, 637, the court said, "We find nothing in the statute to indicate that Congress intended that a municipal corporation should be included within 'parties to a reorganization.'"

The key concept in construing a statute is, of course, what we call the legislature's intention; and "that intention is to be ascertained, not by taking the word or clause in question from its setting and viewing it apart, but by considering it in connection with the context, the general purposes of the statute in which it is found, the occasion and circumstances of its use, and other appropriate tests for the ascertainment of the legislative will." Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 93, 94, 55 S.Ct. 50, 54, 79 L.Ed. 211. See also Helvering v. Morgan's, Inc., 293 U.S. 121, 126, 55 S.Ct. 60, 79 L.Ed. 232; Helvering v. New York Trust Co., 292 U.S. 455, 464, 54 S.Ct. 806, 78 L.Ed. 1361. A reading of the sections as a whole, and the complete ab-

---

[7] Cf. Hanlin v. Commissioner, 3 Cir., 108 F.2d 429 (a difference of one-twentieth to one-eighth of one percent held not substantial).

[8] Cf. Schlemmer v. United States, 2 Cir., 94 F.2d 77.

[9] Although the majority of the Tax Court came to its conclusion in part because there was no "proprietary stake" or "continuity of ownership" with respect to the municipal bonds, we do not decide on that basis, since bondholders of private corporations would be in the same position as those of municipal corporations. See Cortland Specialty Co. v. Commissioner, 2 Cir., 60 F.2d 937; United Gas Improvement Co. v. Commissioner, 3 Cir., 142 F.2d 216; Le

Tulle v. Schofield, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355.

[10] Various House and Senate Committee Reports seem to indicate that the legislators' chief concern was minimizing tax avoidance under the guise of reorganization, at the same time they were attempting not to prevent ordinary business transactions. See, e. g., H.R. Report No. 179, 68th Cong., 1st Sess. (1924), pp. 13, 51; H.R. Report No. 704, 73rd Cong., 2d Sess. (1934), p. 14; Sen. Report No. 558, 73rd Cong., 2d Sess. (1934), p. 17; H.R. Report No. 855, 76th Cong., 1st Sess. (1939), p. 18; Sen. Report No. 648, 76th Cong., 1st Sess. (1939), p. 3.

sence of consideration of municipal corporations in the legislative reports, leads us to conclude that it was not the legislative intention to include municipal corporations within the scope of reorganization provisions.

The decision of the Tax Court is affirmed.

CHASE, Circuit Judge (dissenting in part).

I am unable to agree entirely with my brothers. That there was an exchange of securities which resulted in a gain that would be recognizable under Sec. 112(a) provided Secs. 112(b) (3) and 112(g) (1) (E) are inapplicable seems clear enough. But I think those sections do apply. What was done concededly would have amounted to a "recapitalization" within Sec. 112(g) (1) (E) had the bonds exchanged been those of a private corporation. Commissioner v. Neustadt's Trust, 2 Cir., 131 F. 2d 528; United Gas Improvement Co. v. Commissioner, 3 Cir., 142 F.2d 216. But it is now held otherwise as regards municipal bonds, somewhat in reliance upon what was said in Speedway Water Co. v. United States, 7 Cir., 100 F.2d 636. That case, however, was different. There a municipal corporation bought a water plant and paid for it by issuing secured bonds. The seller then distributed those bonds to its stockholders who surrendered almost all their stock and the corporation thereafter remained only nominally in existence, having no business activities. The decision turned on the fact that there was a sale of property for bonds, and any construction of Sec. 112(g) (1) excluding municipal corporations from its scope was unnecessary.

One may fairly assume that Congress intended to give municipal corporations as much leeway taxwise in dealing with the refunding of their securities as it did private corporations. To some extent the se-

curities of municipal corporations have to compete in the market with those of private corporations and it is impossible for me to believe that the language in the statute, as applicable on its face to one as to the other, was not intended to apply to both. Had Sec. 112(g) (1) contained only two subdivisions, such as those which are now subdivisions (A) and (E), my brothers' principal position would be considerably weakened. That Congress put other subdivisions in this section which could apply only to private corporations seems but to show that where it had to be more explicit in respect to private corporations it knew how to be. Far from being any intimation that municipal corporations may not effect a "recapitalization" within Sec. 112(g) (1) (E), it would appear to indicate that in this one subdivision in which the term used did clearly cover the operations of both it was intended to include both: Congress did not expressly confine it to private corporations to conform it to the inherent limitations of the other clauses.

No reason for differentiating bondholders of a municipal corporation from those of a private corporation for present purposes has been suggested. Both are creditors. Under similar refunding operations, the interests of the former as creditors remain as much the same as do those of the latter. From the standpoint of the individual bondholder the attractiveness of municipal corporate bonds would be altered by any discrimination taxwise in favor of private corporate bonds.[1] But not only would such a discrimination [2] ordinarily be reflected in the marketability of each, it might frequently tend to make municipal bondholders refuse to consent to a refunding that might be highly desirable economically from the standpoint of the corporation. Such a result, I think, was not within the intention of Congress. To construe the statute so as to make it have this effect seems to me both to do violence to its lan-

[1] This irrespective of the fact that interest from municipal bonds is not now includible in the gross income of the bondholder under I.R.C. Sec. 22(b) (4), 26 U.S.C.A. Int.Rev.Code, § 22(b) (4).

[2] Of course non-recognition cuts both ways, since Sec. 112 applies to losses as well as gains. Thus to the extent that the disadvantage of having gains taxable immediately upon the completion of the refunding operations may be offset by the advantage of being able to deduct losses immediately, the discrimination diminishes.

guage and to frustrate the legislative purpose.

I would reverse the decision and allow the refund.