**GIRARD TRUST CO. v. UNITED STATES.**

No. 9385.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 24, 1947.

Decided March 9, 1948.

Kenneth W. Gemmill, of Philadelphia, Pa. (Chester C. Hilinski, and Barnes, Dechert, Price, Smith & Clark, all of Philadelphia, Pa., on the brief), for appellant. S. Dee Hanson, of Washington, D. C. (Sewall Key, Acting Asst. Atty. Gen., Helen R. Carloss, Sp. Asst. to Atty. Gen., and Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, GOODRICH, and Mc-LAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is an appeal in an income tax case by the taxpayer from a judgment against it on the pleadings in its suit to recover income taxes alleged to have been paid in error.

On April 22, 1926 appellant, as trustee, purchased $110,000 par value City of Philadelphia 4¼% bonds due April 1, 1976 with optional retirement date of April 1, 1946, at 102¼, the total purchase price being $112,475. On December 8, 1941 appellant surrendered $50,000 par value of these bonds, pursuant to the 1941 City of Philadelphia refunding plan, for $50,000 par value City of Philadelphia new Series K 1941 refunding bonds. On that date the new bonds had a market value of 117³/₁₀ or a total value of $58,650. On December 31, 1942 appellant in accordance with Philadelphia's 1942 refunding plan, exchanged the remaining $60,000 par value old bonds for $60,000 of the new Series GG refunding bonds. The latter on that date had a market value of 109⅞ or a total value of $65,925. The refunding bonds bore the same rate of interest as the original bonds to the maturity date of the latter and after that the interest on the refunding bonds was less. The new bonds had an earlier maturity date and a later optional

maturity date than the old ones. Between the price paid 'for the old and the fair market value of the new was a difference favorable to the latter of over $12,000 and upon this in 1941 and 1942 taxes were paid totaling $207.91.

■ The district court in denying the tax recovery sought by appellant found sufficient difference between the terms and conditions of the original bonds and of the refunding bonds to render the resultant gain taxable under Section 112(a) of the Internal Revenue Code, 26 U.S.C.A.Int. Rev.Code, § 112(a), as an exchange of property which does not come within the exception of Section 112(b) (1) providing for no recognition of gain or loss in an exchange of property "solely for property of a like kind to be held either for productive use in trade or business or for investment."

Appellant insists that Section 112(a) does not apply to these transactions because there was actually no "exchange", urging that the new bonds were merely a continuation of Philadelphia's old debt and that they were substantially identical with the original bonds. We cannot agree with that contention. The refunding bonds were not the same as the original issue nor were they the "like kind" of property so as to bring them within the exception of Section 112(b) (1). This difference was not just in calling the 1941 bonds Series K and the 1942 issue Series GG. The bond issues of those two years had important basic differences from the original bonds as to interest rates, maturity and call dates and fair market values. The differences between the issues and the attractiveness of the new refunding bonds to the holders of the old issue were stressed in the submission of the refunding plan by the bankers involved to the municipality. The appeal of the new bonds is evident from their increase in market value over the old issue. It should be noted that the exchanges of issues were voluntary and that the charges for such exchanges at the rate of 1% of the principal amount of each exchange were borne by the bondholders.

Appellant argues that City Bank Farmers Trust Co. v. Hoey, D.C.S.D.N.Y., 52 F. Supp. 665, affirmed per curiam 2 Cir., 138 F.2d 1023, and Commissioner v. Motor Products Corp., 47 B.T.A. 983, affirmed per curiam 6 Cir., 142 F.2d 449, two decisions arising out of refundings in the City of Detroit, support its theory that there was no exchange of property in this matter. But the recent opinion of the Second Circuit Court of Appeals filed January 30, 1948 in Emery v. Commissioner 166 F.2d 27, completely answers that contention. The Emery case was an appeal from the Tax Court which concerned the same sort of transaction in the same City of Philadelphia bonds with which we are dealing on this appeal. Girard Trust, the instant appellant, was also trustee for Emery and as such handled the exchange of bonds in that matter. The Hoey and Motor Products opinions were there relied on by the taxpayer as here and Judge Frank for the court said regarding them page 166 F.2d 29:

"We do not believe that the exchange of Detroit bonds provides a controlling parallel. If the test be that the exchange must have 'something really different from what he theretofore had,' we think a showing that the new bonds brought more in the market than the old is as good an indication as we can ask that they were something different. The market differential was present in the case at bar; it was not present in the Detroit bond cases. We have here, therefore, an exchange of bonds which were not only legally different, but which actually had a different financial value. Moreover, the difference in yield was not inconsequential. We think this is an exchange on which a gain is recognized under § 112(a), and not merely new evidence of an old obligation."

■ The other point stressed by the taxpayer is that assuming income was realized it is not to be recognized under Section 112 (b) (3) of the Internal Revenue Code. That section reads:

"No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

Section 112(g) (1) (E) provides that among other things the term reorganiation in 112(b) (3) means "a recapitaliation."

It is maintained that the municipal refinancing with which we are dealing is substantially like the business recapitaliation principle recognized by this court in United Gas Imp. Co. v. Commissioner, 3 Cir., 142 F.2d 216, in accord with Commissioner v. Neustadt's Trust, 2 Cir., 131 F.2d 528. The vital distinction between those decisions and the case at bar is that the former dealt with private corporations. The reorganization sections above referred to are barren of any reference to municipal corporations nor is there any indication in the legislative history of the sections that municipal corporations were meant to be included or even thought of in connection with the statute. Appellant made the same argument in the Emery appeal, supra, as it does here and Judge Frank speaking of it said 166 F.2d 30:

"We think that we would do violence to the overall purpose of the sections of the Internal Revenue Code on reorganization to extend their scope to include such refunding by municipal corporations."

The only other reported case where this question was raised was in Speedway Water Co. v. United States, 7 Cir., 100 F.2d 636, at page 637 where the court said:

"We find nothing in the statute to indicate that Congress intended that a municipal corporation should be included within 'parties to a reorganization.' Indeed, it seems apparent that the purpose of the exemption provisions included in the legislation was to remove an impediment to corporate readjustments and to prevent the taxation of purely fictitious gains."

It is suggested that unless municipal corporations are read into the above reorganization provisions of the Revenue Code a burden is placed upon them not imposed upon private corporations. If this is so then the remedy is by Congressional action, for, as the sections now stand, they are definitely confined to private corporations.

The judgment of the district court is affirmed.