NEWMAN & CO., Societe Financiere De Transports et D'Entreprises Industrielles (Sofina) S.A., Societe Pour La Finance et L'Electricite, S.A., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 64 Civ. 1576.

United States District Court
S. D. New York.

Aug. 22, 1968.

Howard H. Bachrach, Hooker, Alley & Duncan, New York City, for plaintiffs.

Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, Stanley M. Eisenstat, Irwin B. Robins, Asst. U. S. Attys., of counsel, for defendant.

## OPINION

TENNEY, District Judge.

This is an action for refund of income tax withheld pursuant to section 1442 of the Internal Revenue Code of 1954, 68A Stat. 358 (amended Nov. 13, 1966). Jurisdiction is founded upon 28 U.S.C. § 1346(a) (1). The action was timely instituted and is a case of first impression. Plaintiffs and defendant have all moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and have filed herein a joint statement pursuant to Rule 9(g) of the General Rules of this court, setting forth the material facts as to which there is no genuine issue to be tried. It seems clear that the only issue is one of law and that summary judgment is the appropriate remedy. A brief recital of the underlying facts, however, is necessary and may prove helpful.

During the period in question (1954–1958), plaintiffs Societe Financiere de Transports et d'Entreprises Industrielles (SOFINA), S.A. (hereinafter called "Sofina") and Societe pour la Finance

et l'Electricite, S.A. (hereinafter called "Solec") were foreign corporations not engaged in a trade or business within the United States. Sofina was a Belgian corporation while Solec was a corporation organized under the laws of Luxembourg.

Solec and Sofina were the beneficial owners of the majority of stock in three United States corporations: American Intercontinental Trade Service Company (AMITAS), Inc. (hereinafter called "Amitas"), Sulectra, Inc. (hereinafter called "Sulectra"), and Belgian Services Corporation (hereinafter called "BSC"). This stock was registered in the name of Newman & Company (hereinafter called "Newman"), a domestic partnership which acted as nominee for Solec and Sofina.

At various times during the period 1954–1958, Amitas, Sulectra and BSC distributed appreciated securities in unrelated corporations to their corporate stockholders. Newman, in accordance with the provisions of section 1442 of the Internal Revenue Code of 1954, withheld tax at the appropriate rate on each dividend. However, the amount of tax withheld was computed based on the *adjusted* basis of the property distributed, i. e., $1,137,318.55. Upon audit, the Internal Revenue Service determined a deficiency (subsequently assessed) on the ground that Newman should have computed the withholding tax based on the *fair market value* of the appreciated securities at the time of distribution, i. e., $2,572,941.16.

Section 1442 provides for withholding of tax at a rate of 30 per cent (or less, if so provided by treaty) on items of income earned in the United States by foreign corporations not engaged in trade or business within the United States.

While sections 1442 and 1441 relate to the withholding of the tax, it is section 881 which imposes the tax on such corporations.

§ 881 [68A Stat. 282 (amended Nov. 13, 1966)]. Tax on foreign corporations not engaged in business in United States.

(a) Imposition of Tax.

In the case of every foreign corporation not engaged in trade or business within the United States, there is hereby imposed for each taxable year, in lieu of the taxes imposed by section 11, a tax of 30 percent of the amount received from sources within the United States as interest (except interest on deposits with persons carrying on the banking business), dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income (including amounts described in section 631(b) and (c) which are considered to be gains from the sale or exchange of capital assets).

§ 1442 [68A Stat. 358 (amended Nov. 13, 1966). Withholding of tax on foreign corporations.

In the case of foreign corporations subject to taxation under this subtitle not engaged in trade or business within the United States, there shall be deducted and withheld at the source in the same manner and *on the same items of income as is provided in section 1441 or section 1451* a tax equal to 30 percent thereof; except that, in the case of interest described in section 1451 (relating to tax-free covenant bonds), the deduction and withholding shall be at the rate specified therein. (Emphasis added.)

Section 1441, defining the items of income on which withholding is to apply, reads as follows:

§ 1441 [68A Stat. 357 (amended Nov. 13, 1966)]. Withholding of tax on nonresident aliens.

(a) General rule.

Except as otherwise provided in subsection (c), all persons, in whatever capacity acting (including lessees or mortgagors of real or personal property, fiduciaries, employers, and all officers and employees of the United

States) having the control, receipt, custody, disposal, or payment of any of the items of income specified in subsection (b) (to the extent that any of such items constitutes gross income from sources within the United States), of any nonresident alien individual, or of any partnership not engaged in trade or business within the United States and composed in whole or in part of nonresident aliens, shall (except in the cases provided for in section 1451 and except as otherwise provided in regulations prescribed by the Secretary or his delegate under section 874) deduct and withhold form such items a tax equal to 30 percent thereof.

(b) Income items.

The items of income referred to in subsection (a) are interest (except interest on deposits with persons carrying on the banking business paid to persons not engaged in business in the United States), dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income, and amounts described in section 402(a) (2), section 403(a) (2), section 631(b) and (c), and section 1235, which are considered to be gains from the sale or exchange of capital assets.

Were the question limited to the interpretation of §§ 881, 1441 and 1442, little difficulty would be encountered, 881 imposing the tax and 1441 and 1442 encompassing the collection by means of withholding. The difficulty is that § 301, relating, among other things, to distributions of property by a corporation to a corporate distributee, permits the corporate distributee to treat as income either the fair market value of the property received or the adjusted cost basis of the distributing corporation, whichever is lower, whereas the withholding provision of § 1442 as defined by § 1441 would compel treatment of such a distribution as being made to a non-resident alien (rather than to a corporate distrib-

utee) and require withholding on the basis of the fair market value.

Section 301, which, together with § 881, forms part of Chapter I of the Revenue Act of 1954, provides as follows:

§ 301 [68A Stat. 84 (amended Nov. 13, 1966)]. Distributions of Property.

(a) In general.

Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c).

(b) Amount distributed.

(1) General rule.

For purposes of this section, the amount of any distribution shall be—

(A) Noncorporate distributees.

If the shareholder is not a corporation, the amount of money received, plus the fair market value of the other property received.

(B) Corporate distributees.

If the shareholder is a corporation, the amount of money received, plus whichever of the following is the lesser:

(i) the fair market value of the other property received; or

(ii) the adjusted basis (in the hands of the distributing corporation immediately before the distribution) of the other property received, increased in the amount of gain to the distributing corporation which is recognized under subsection (b) or (c) of section 311.

\* \* \* \* \* \*

(3) Determination of fair market value.

For purposes of this section, fair market value shall be determined as of the date of the distribution.

(c) Amount taxable.

In the case of a distribution to which subsection (a) applies—

(1) Amount constituting dividend.

That portion of the distribution which is a dividend (as defined in

section 316) shall be included in gross income.

(2) Amount applied against basis.

That portion of the distribution which is not a dividend shall be applied against and reduce the adjusted basis of the stock.

(3) Amount in excess of basis.

(A) In general.

Except as provided in subparagraph (B), that portion of the distribution which is not a dividend, to the extent that it exceeds the adjusted basis of the stock, shall be treated as gain from the sale or exchange of property.

(B) Distributions out of increase in value accrued before March 1, 1913.

That portion of the distribution which is not a dividend, to the extent that it exceeds the adjusted basis of the stock and to the extent that it is out of increase in value accrued before March 1, 1913, shall be exempt from tax.

(d) Basis.

The basis of property received in a distribution to which subsection (a) applies shall be—

(1) Noncorporate distributees.

If the shareholder is not a corporation, the fair market value of such property.

(2) Corporate distributees.

If the shareholder is a corporation, whichever of the following is the lesser:

(A) the fair market value of such property; or

(B) the adjusted basis (in the hands of the distributing corporation immediately before the distribution) of such property, increased in the amount of gain to the distributing corporation which is recognized under subsection (b) or (c) of section 311.

In Rev.Rul. 57–470, 1957–2 Cum.Bull. 608, the Internal Revenue Service held that:

"The 'gross amount' upon which withholding is required under section 1.1441–2 of the Income Tax Regulations [effecting the provisions of section 1441] is not determined under section 301(b) (1) (B) of the Code, since section 301(b) (1) (B) is not applicable to non-resident foreign corporations. Such dividends in kind are subject to withholding at full fair market value."

On the basis of Rev.Rul. 57–470, supra, the Commissioner assessed the tax in this case. The question is whether such assessment was illegal and erroneous. After full consideration, I find that it was not, and that the Commissioner acted properly.

§ 881 of the Internal Revenue Code of 1954 is the expression of Congress' intention and the underlying statutory authority to tax foreign corporations not engaged in a trade or business in the United States. Where such a foreign corporation earns income in this country, its sole contact with the United States is the income which it receives and once that income has left this country it has escaped the effective reach of the taxing authority, and any tax due is for all intents and purposes uncollectible. The only effective means is the withholding of tax at the American source of that income earned by the non-resident foreign corporation. As stated in 8A Mertens, Law of Federal Income Taxation, § 47B.01 (Rev. ed. 1964):

"Withholding of tax and payment of the tax at the source have proven invaluable in facilitating the proper collection of this revenue. It is the duty and obligation of the payor of income, under the withholding provisions, to collect the tax for the Government by deducting the proper amount and remitting only the balance to the non-resident recipient. *The payor in most cases is the more responsible person, has no incentive to understate the income payable, and is constantly subject to the personal jurisdiction of the courts.* (Emphasis added and footnote omitted.)

In the Internal Revenue Code of 1954, § 1442 provides the means of implementing § 881, that is, the collection procedure whereby the tax is withheld at the source. In actual fact, however, § 1442 does not in itself describe the items subject to tax nor does it provide the detailed mechanics of collection. Instead, it refers to § 1441 for these administrative provisions. By the same token, the regulations under § 1442 do not seek to spell out any of the details concerning that section but instead make reference to the regulation under § 1441 which deals with withholding of tax on non-resident aliens. Treas. Reg. § 1.1442–1. Such regulation is unequivocal in stating that where dividends are concerned tax must be withheld on the gross amount of the dividend, not on any net or otherwise reduced amount. The regulation states as follows:

"Income subject to withholding—

(a) Fixed or determinable annual or periodical income. (1) The *gross* amount of fixed or determinable annual or periodical income is subject to withholding. Section 1441(b) specifically includes in such income interest, *dividends* * * *." (Emphasis added.)

Accordingly, it is apparent that the regulations carry out the intent of Congress to collect tax while it is feasible to do so and before it becomes uncollectible on the gross amount of the income [1] in question. Where the distribution is in cash there is, of course, no difficulty in ascertaining the "gross amount". Likewise, where the distribution is in property instead of cash, there is no difficulty for the measure of income is the fair market value of the property received. 2 Mertens, supra, at § 11.03. Therefore, the relevant regulation requires the taxation of dividends to foreign corporations not engaged in a trade or business in the United States at a fixed rate of the gross amount of the dividend received, i. e.,
the amount of cash or the property received (at its fair market value).

This is consistent with the Code itself since § 1442 provides for the withholding of the tax on such foreign corporations on the same items of income as provided in § 1441, which, under subparagraph (b) thereof include dividends. It seems clear that such dividends as are involved herein must be taxed at the fair market value under § 301(b) (1) (A) since the non-resident alien would come within the description of a non-corporate distributee.

Plaintiffs seek to graft § 301(b) (1) (B) onto §§ 881, 1442 and 1441 in complete disregard of the provisions of §§ 1442 and 1441 which dictate the applicability rather of § 301(b) (1) (A). In other words, they are attempting to apply § 301(b) (1) (B) to a situation to which it cannot apply and to which it was never intended to apply. On the face of the statute the provisions of § 301 can only apply when the distributee regardless of its legal status is also subject to taxation by the United States. To apply it to any other situation would render it meaningless. The section must be read as a whole. Thus § 301(b) (1) (B) must be read together with § 301(d) which provides that there be no increase in basis of appreciated property in the hands of a corporate distributee when it receives a distribution of such property. This is in accord with the Congressional scheme which prevents a corporation from stepping up its basis in property by distributing it to its subsidiary at very little tax cost while, at the same time, artificially creating a new basis, thereby increasing the depreciation deduction on the property or reducing the gain on its sale. See H.R.Rep. No. 1337, 83d Cong., 2d Sess. 34 (1954), U.S. Code Congressional and Administrative News, p. 4025.

---

1. Pg. 11. As originally proposed, the regulations did not use the phrase "gross amount" as the standard against which the tax will be levied. Proposed Treas. Reg. § 1441–2, 21 Fed.Reg. 584 (1956). The inclusion in the final regulations of the phrase "gross amount" can only be interpreted as evidence of an attempt to carry out the clear intent of Congress to tax the distribution to the maximum extent possible.

Obviously, the distributee must be subject to taxation by the United States, for otherwise of what concern is it how a distribution is treated in the hands of the distributee if the latter is not within the scope of United States taxation?

Section 301 cannot apply to the plaintiffs Sofina and Solec who were not subject to domestic taxation other than through the provisions of §§ 881 and 1442 and who, when they sell the appreciated property received as a dividend, will not be subject to the United States Law and will pay no taxes.

 Only if § 301 is read as excluding from its coverage foreign corporations not engaged in a trade or business within the United States is it consistent with §§ 1442 and 1441. Furthermore, if there is any ambiguity in the statute, then the Court must consider the word "corporation" as used in § 301 with reference to the other relevant portions of the Act, such as §§ 1442 and 1441.

"It would do violence to the rules of statutory construction or interpretation to single out and divorce a single phrase in a section without reference to the other portions of the Act and without reference to the manifest purpose of Congress. The legislative intent is to be determined 'not by taking the word or clause in question from its setting and viewing it apart, but by considering it in connection with the context, the general purposes of the statute in which it is found, the occasion and circumstances of its use, and other appropriate tests for the ascertainment of the legislative will.' Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 55 S.Ct. 50, 54, 79 L.Ed. 211. See, also: United States v. American Trucking Ass'n, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345; Harrison v. Northern Trust Co., 317 U.S. 476, 63 S.Ct. 361, 87 L.Ed. 407." Mercantile-Commerce Bank & Trust Co. v. Commissioner, 165 F.2d 307, 310–311 (8th Cir.), cert. denied, 333 U.S. 868, 68 S.Ct. 791, 92 L.Ed. 1146 (1948). See also Emery v. Commissioner of Internal Revenue, 166 F.2d 27, 1 A.L.R.2d 409 (2d Cir. 1948).

Indeed, legislative history, a factor of prime importance in construing a statute where ambiguity exists, Commissioner of Internal Revenue v. Bilder, 369 U.S. 499, 82 S.Ct. 881, 8 L.Ed.2d 65 (1962), would appear to support the Government's position herein.

Prior to the enactment of the Internal Revenue Code of 1954, no distinction was made when appreciated property was distributed by a corporation. Whether the recipient was a corporation or an individual, the fair market value of the property distributed was a dividend and subject to tax if there were sufficient earnings and profit in the distributing corporation (an issue not present herein). Internal Revenue Code of 1939, § 115(a), 53 Stat. 46.

Although the 1954 Code altered this situation, the legislative history of § 301 (b) (1) (B) clearly demonstrates the intention of Congress not to exempt from taxation by the United States the appreciation in value of property distributed as a dividend but only to defer the tax on such appreciation.

The report of the House Ways & Means Committee which accompanied the bill clearly indicates what was intended by revision. H.R.Rep. No. 1337, 83d Cong., 2d Sess. 34 (1954). All Congress intended was the deferment of the tax until it was outside "the corporation solution". When the distributee corporation sold the property Congress intended that it be taxed on the gain just as the distributing corporation would have been taxed had it retained the property and ultimately the United States would collect a tax on the appreciation in value.

It is true, as stressed by the plaintiffs herein, that legislation was proposed in 1960 to amend § 301(b) (1) so as to deal explicitly with the situation here in question, together with the treatment of a distribution of property by a foreign corporation to a domestic corporation. H.R. 13106, 86th Cong., 2d Sess. (1960). The fact that the portion of the bill relating to a distribution by a foreign

corporation was ultimately enacted in 1962 and is now § 301(b) (1) (C) is not as significant as plaintiffs would make it out to be. It can well be argued that enactment of that portion of the bill relating to a distribution by a foreign corporation shows Congressional recognition that § 301 dealt with situations where the distributee was subject to domestic taxation. It is of great significance, however, that in 1962 Congress reiterated its endorsement of tax deferral while profits are in the corporate solution, H.R.Rep. 1447, 87th Cong., 2d Sess. 26 (1962), an endorsement which is completely inconsistent with the notion that Congress at the same time silently acquiesced in an interpretation of § 301(b) (1) (B) which violates the corporate solution concept. Furthermore, since the instant case is concededly one of first impression, it hardly seems likely that the alleged tax avoidance loophole was considered a very significant one at that time.

Moreover, the legislative history of §§ 881 and 1442 clearly demonstrates that Congress intended to tax the gross amount of dividends paid to non-resident foreign corporations without regard to § 301(b) (1) (B).

In enacting the withholding provisions of the 1954 Code, Congress expressly stated that it intended to preserve the law as it existed under the 1939 Code without any substantive changes. S.Rep. No. 1622, 83rd Cong., 2nd Sess. 458 (1954), U.S. Code Congressional and Administrative News, p. 4629. Accordingly, in interpreting the provisions of the 1954

Code, it is necessary to look to and be guided by the expressions of intention on the part of Congress which it made when the present system of taxing non-resident foreign corporations first came into being, namely, in the Revenue Act of 1936.

Prior to the Revenue Act of 1936, all foreign corporations (whether or not engaged in a trade or business in the United States) were subject to the same taxation as other domestic corporations. Fundamentally, taxes were levied on net taxable income as reflected in an annual return. In addition, there was a rudimentary system of withholding taxes on certain periodic payments made to corporations. However, this system proved inadequate where foreign corporations not engaged in a trade or business were involved, since so much of the provisions as required the filing of a return could not be enforced because the corporations involved were not within the jurisdiction of the United States.[2] Congress, accordingly, in 1936 eliminated the annual return concept for such corporations and substituted instead the system of taxing them at a flat rate on more kinds of periodic payments, which tax was to be withheld at the source.[3] The vehicle for such system was § 231(a) of the Revenue Act of 1936.

§ 231. Tax on foreign corporations.

(a) Nonresident Corporations. There shall be levied, collected, and paid for each taxable year, in lieu of the tax imposed by sections 13 and 14, upon the amount received by every

---

**2.** Pg. 19. Prior to the Revenue Act of 1936, it was suggested that the tax on non-resident aliens be abolished. The basis for this proposal was the difficulty in administering the tax and the fact that the existence of the same discouraged foreign investment. This suggestion was rejected. Hearings on Revenue Revision, 1927–28 Before the Committee on Ways and Means, Interim 69th–70th Cong. pp. 484–86 (1928).

**3.** Pg. 19. In reversing the method of taxation, Congress clearly stated its position:

"It has also been necessary to recommend substantial changes in our pres-

ent system of taxing non resident aliens and foreign corporations.

\* \* \* \* \*

"It is believed that the proposed revision of our system of taxing non resident aliens and foreign corporations *will be productive of substantial amounts of additional revenue since it replaces a theoretical system impractical of administration in a great number of cases.*" (Emphasis added.) H.R.Rep. No. 2475, 74th Cong., 2d Sess. 9 (1936). See also S.Rep. No. 2156, 74th Cong., 2d Sess. 23 (1936).

foreign corporation not engaged in trade or business within the United States and not having an office or place of business therein, from sources within the United States as interest (except interest on deposits with persons carrying on the banking business), dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income, a tax of 15 percentum of such amount, except that in the case of dividends the rate shall be 10 percentum, and except that in the case of corporations organized under the laws of a contiguous country such rate of 10 percentum with respect to dividends shall be reduced to such rate (not less than 5 percentum) as may be provided by treaty with such country.[4]

The original bill passed in the House provided that non-resident aliens would be taxed on periodic payments received at a rate of 10 per cent (H.R. 12395, 74th Cong., 2d Sess. § 211(a)), whereas non-resident corporations were taxed at the rate of 15 per cent. (Id., § 231(b).)

The applicable sections of the Senate bill, which ultimately were incorporated in the Revenue Act of 1936, adopted the same general scheme of taxation of non-resident individuals and corporations, with the exception that dividends received by non-resident individuals were taxed *at the same rate* as those of foreign corporations not engaged in a trade or

business here. As stated in the Senate Report:

" \* \* \* Your committee concurs in the substance of these provisions [in the House bill] but recommends an amendment to section 231 of the House changing the rate of tax on such income, except for dividends, from 15 percent to 18 percent and in the case of dividends, fixing the rate at 5 percent in the case of corporations organized under the laws of a contiguous country and 10 percent in the case of other foreign corporations. *For various reasons, it is believed the tax on dividends should be the same in the case of a corporate as in the case of an individual recipient. It should be noted that under the House bill corporate profits distributed to stockholders abroad may never have been taxed, while under the Finance Committee bill they would have been subject to at least the normal corporation tax.*" S.Rep. No. 2156, 74th Cong., 2d Sess. 23 (1936). (Emphasis added.)

The significance of the last two sentences is clear. The Senate expressed two extremely important concepts in making the change, which concepts have been carried over to the Internal Revenue Code of 1954. The first was that *the rate of tax on dividends* received by a foreign corporation not engaged in a trade or business in the United States *was to be the same as that imposed on a non-resident alien. An individual never could, and cannot now, treat as dividend*

4. Pg. 20. The system established in the Revenue Act of 1936 has continued essentially unchanged. Section 231(a) of the Internal Revenue Code of 1939 which was identical with section 231(a) of the 1936 Act stated that it would apply to foreign corporations not engaged in a trade or business in the United States and *not having an office in the United States*. Numerous foreign corporations not otherwise engaged in a trade or business in the United States concluded that they would be better off if they were subject to the regular United States taxes on net income rather than a flat tax (without any deductions) on dividends and other periodic payments. Accordingly, they sought to avoid the effect of § 231(a) merely by opening offices in the United States, the sole purpose of which was to avoid falling within the criteria of § 231(a). Congress recognized that the section as it was phrased offered a loophole to these corporations, H.R.Rep. No. 2333, 77th Cong., 2d Sess. 50 (1942), and, in the Revenue Act of 1942, deleted the "office in the United States" provision. Thereafter, § 231(a) applied to any foreign corporation not engaged in a trade or business in the United States. See S.Rep. No. 1631, 77th Cong., 2d Sess., 51, 135, 136 (1942).

*income subject to tax anything less than the fair market value of the property distributed.*

Secondly, the American corporation was required to have paid at least some tax on the profits which it was distributing to the non-resident foreign corporation or individual. Congress did not want the situation to arise where profits would be distributed to a non-resident foreign corporation, which profits had not been subjected already to the United States taxation while still in the hands of the American corporation, even though they would also be subjected to the withholding tax on dividends to foreign stockholders. This policy would be controverted if by invoking an unrelated section some of the profits would escape taxation in the United States.

At this point it becomes necessary to examine the relationship for tax purposes between a corporation and its stockholders. Under our system of taxation, when a corporation earns income it pays a tax on that income. When it distributes its profits after taxes to its stockholders as a dividend, the stockholders pay a tax on those dividends.

Where the corporation seeking to pay a dividend has acquired property which increased in value, it has two choices. It can sell the property for cash and distribute the cash as a dividend or it can simply distribute the property itself as a dividend. If the distributing corporation sells the property for cash, it would have to pay a tax on the profits before it makes a dividend payment to the stockholders.

On the other hand, *unrealized* profit from the increase in value of property has never been and is not now taxable. Thus, if the distributing corporation has acquired property which increases in value and distributes that property to its stockholders, the distributing corporation never has to pay a tax on the increase in value. The transaction is, however, a taxable event to the stockholders, who must pay a tax on the dividend measured by the fair market value of the property received, even though they have not sold the property. Thus, tax is collected on the profits, i. e., the increase in value of the property—at the time the dividend is paid—just as if the distributing corporation had sold the property for cash, paid tax on its profit, and then distributed the balance to its stockholders.[5]

Where the stockholder is another "corporation", § 301(b) (1) (B) permits a deferral of tax on the profit,— i. e., the increase in value of the property—while it is in the corporate solution, that is, until such time as the stockholder corporation sells the property since *it is a deferral, not a forgiveness of tax;* the taxable incident to the stockholder is simply postponed. Under the system proposed by the plaintiffs, however, where a non-resident foreign corporation is the stockholder the tax on the profit would not be deferred, but rather it would be forever lost, since the non-resident distributee foreign corporation would not have to pay tax to the United States when it sells the property, nor would the domestic distributor corporation pay a tax at time of distribution.

Returning to the initial premise of Congress in passing the Revenue Act of 1936, namely, to eliminate a system whereby "corporate profits distributed to stockholders abroad may never have been taxed", but instead to insure that they will have been subjected to tax here, it seems clear that Congress never intended to permit any of the profits of a domestic corporation to escape taxation forever simply because they were unrealized when distributed to a foreign corporation as a dividend.

The intent of Congress concerning the withholding provisions as expressed in 1936 is applicable to the 1954 Code, and is completely consistent with the statutory history of § 301(b) (1) (B).

---

5. Pg. 23. The total tax paid will necessarily differ because of the addition of another taxpayer.

■ I conclude, therefore, that a foreign corporation not engaged in trade or business within the United States is not a corporate distributee entitled to the benefits of § 301(b) (1) (B) of the Internal Revenue Code of 1954.

Accordingly, plaintiffs' motion for summary judgment is denied and defendant's motion is granted.

Settle order on notice.