WEST MISSOURI POWER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 30230.   Promulgated April 23, 1952.

*W. E. Baird, C. P. A.*, for the petitioner.
*George E. Gibson, Esq.*, for the respondent.

OPINION.

BLACK, *Judge:* This proceeding raises the question whether petitioner sustained a loss in 1941 upon the redemption of its Arkansas "refunding bonds" as it claims, or realized a capital gain thereon as determined by the Commissioner. This question calls for a determination of petitioner's basis for the "refunding bonds." Petitioner maintains in two independent arguments that the basis is the cost to petitioner of the "old bonds," while respondent determined it to be the fair market value of the "refunding bonds" on the date of exchange

of the "old bonds" for the "refunding bonds." Alternatively petitioner raises the third issue by contending that it received tax exempt income when the bonds were redeemed.

The initial question is whether the exchange of petitioner's "old bonds" for the "refunding bonds" in 1934 was an exchange of property within the meaning of section 112 (a), I. R. C. Section 112 (a) provides that "upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized" for determining capital gains or losses. Generally there will be a gain or loss realized on the exchange of property. Petitioner contends here that the 1934 transaction whereby it received the "refunding bonds" did not constitute a section 112 (a) exchange.

Petitioner relies primarily on *Motor Products Corporation*, 47 B. T. A. 983, affirmed per curiam, 142 F. 2d 449. In holding that a municipal bond refunding plan was not a section 112 (a) exchange, the Board emphasized the following factors:

[p. 996] In our opinion, the refunding agreement to which this petitioner was a party presented a plan whereby the city of Detroit merely issued new bonds in substitution for and in continuation of outstanding evidences of its former bonded indebtedness and the result of the transaction was merely to effectuate an extension of time for payment of that portion of the former bonded indebtedness originally maturing on or before June 30, 1943 (and also an extension for payment of a certain portion of the interest accruing thereon through the issuance of series B and C bonds), such extension being coupled with an option to the city of paying off the indebtedness represented by the refunding bonds, series A, at par with accrued interest on any interest payment date. The city assumed no additional obligation under the refunding agreement or upon the refunding bonds, series A, since upon the consummation of the refunding agreement through the issuance of such series A bonds there existed the same debtor, the same principal amount of indebtedness, the same rate of interest thereon, the same provision for a sinking fund, and the same creditors. Certainly, from the standpoint of the city of Detroit the essence of the 1934 transaction was an exchange constituting merely a substitution of the evidence of the same continuing debt. * * *

[p. 997] * * * Furthermore, the 1931 bonds and the series A bonds had the same fair market value on the date of the exchange.

See also *City Bank Farmers Trust Co.* v. *Hoey*, 52 F. Supp. 665 (1942), affirmed per curiam 138 F. 2d 1023, in which the only differences between the old and new bonds mentioned in the opinion were the right to prepayment and market values. The District Judge said:

* * * Regulation 86, promulgated under the 1934 Revenue Act, Article III–1 reads: "The Act regards as income or as loss sustained the gain or loss realized from the conversion of property into cash or from the exchange of property for other property differing materially either in kind or extent." We do not believe the taxpayer effected any exchange whatever. When the refunding operation was completed he held precisely the obligation he had held before. The regulation defines the statute to include income derived from an exchange of property for other property differing materially either in kind or extent. The

obligation in the new bond does not differ either in kind or extent from that expressed in the old; it is the same. * * *

We think that substantially the same thing may be said of the bond substitution which petitioner made here in 1934 with the State of Arkansas. Here petitioner owned State of Arkansas Highway Bonds, 4½ per cent, due 1943, dated June 1, 1927, $50,000. In the place of these it received $50,000 State of Arkansas Highway Refunding 4½ per cent Bonds, Series A, dated January 1, 1934, due April 1, 1953. It owned $25,000 State of Arkansas Highway Bonds, 5 per cent, due 1951, dated January 15, 1931. In the place of these it received $25,000 State of Arkansas Highway Refunding 5 per cent Series A Bonds, dated January 1, 1934, due April 1, 1961. It owned $10,000 State of Arkansas Toll Bridge Bonds 4¾ per cent, due 1945, dated November 1, 1930. In the place of these it received $10,000 State of Arkansas Toll Bridge Refunding 4¾ per cent Bonds, Series A, dated January 1, 1934, due October 1, 1955.

It has been stipulated that "On its books petitioner carried its 'new Arkansas refunding bonds' at the original cost of its 'old Arkansas bonds.' No loss was claimed by petitioner in respect to these bonds in its income tax return for the year 1934 and no loss thereon has been allowed petitioner." While it is true, of course, that the mere fact that petitioner took no loss in 1934 as resulting from the substitution of bonds in the refunding transaction with the State of Arkansas would not be conclusive of the issue which we have here, nevertheless, we think that the petitioner's action in taking no loss as a result of the refunding operation was correct under the applicable law and the facts. We think, to use the language of District Judge Clancy in *City Bank Farmers Trust Co.* v. *Hoey, supra,* "The obligation in the new bond does not differ either in kind or extent from that expressed in the old; it is the same." We see no material difference in the bonds which petitioner received from those which it surrendered in the refunding operation except as to the dates of maturity. This latter factor, we think, is not material. That factor was present in *Motor Products Corporation, supra,* but we attached no importance to it, pointing out·"such extension being coupled with an option to the city of paying off the indebtedness represented by the refunding bonds, series A, at par with accrued interest on any interest payment date."

A similar provision was contained in the "refunding bonds" which are involved here and, as a matter of fact, the State of Arkansas did redeem them on an interest payment date in 1941, at par plus accrued interest. As has already been pointed out, petitioner received upon the redemption of these bonds $85,000, and it seems unrealistic under the facts and circumstances which have been stipulated to say that petitioner realized a capital gain of $22,100 upon the redemption

of these bonds, notwithstanding the "old bonds" for which the "refunding bonds" were substituted cost petitioner $86,345.25. We hold that petitioner had a capital loss of $1,345.25 as it claims, instead of a capital gain of $22,100 as the Commissioner has determined.

We think the instant case is distinguishable on its facts from *Girard Trust Co.* v. *United States*, 166 F. 2d 773, and *Thomas Emery*, 8 T. C. 979, affd. 166 F. 2d 27, upon which the Commissioner strongly relies. Those cases involved a bond refunding operation of the city of Philadelphia of bonds not in default but refunded because it was felt that the bonds could be refunded by offering a method of voluntary exchange which would, in the long run, be advantageous to the finances of the city of Philadelphia. Up to a certain date the new bonds carried the same rate of interest as the old bonds and after that date the interest rate of the bonds was substantially lower. This fact we emphasized in our opinion in the *Emery* case, *supra*, in the following language: "The interest rate of the refunding bonds, fixed to equal the rate of the old bonds until the latters' first call date, was substantially less thereafter." Again we said in that case:

Of material bearing on the issue, furthermore, is the city's inferable purpose in adopting the refunding plan and the method chosen to carry it into effect. The outstanding bonds bore a higher rate of interest than the current money market demanded; it would have been to the city's advantage to call the old bonds at the earliest call date, and to issue new bonds at lower rates. *In effect it accomplished this result in an anticipatory manner by paying the old rate on the new bonds until the old bonds' first call date and the lower rate thereafter.* The refunding bonds, so viewed, are thus clothed with the character of a new obligation, having different terms and conditions. * * * [Emphasis added.]

In the instant case, no change in interest rate was made in the "refunding bonds" from that which was carried in the "old bonds." It is true that for a period of time the interest on the "refunding bonds" was to be paid part in cash and part in series B bonds. But, as we have already emphasized, the interest rate was to be the same throughout the life of the bonds, and the fact that part of this interest for a few years was to be paid in cash and part in series B bonds does not make such a substantial difference between the "old bonds" and the "refunding bonds" as to make the exchange a taxable one. That factor was present in *Motor Products Corporation*, *supra*, and we attached no importance to it.

On this issue we hold in favor of the petitioner. Having held in petitioner's favor as to this issue, it becomes unnecessary to pass upon Issues 2 and 3 which petitioner raises in the alternative.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

HARRON, OPPER, LEMIRE, and RAUM, *JJ.*, concur in the result.