The Minneapolis Security Building Corporation, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 82131.   Promulgated November 22, 1938.

*Oswald Maland, Esq.*, for the petitioner.
*B. M. Brodsky, Esq.*, for the respondent.

#### OPINION.

Murdock: The Commissioner determined a deficiency of $671.22 in the petitioner's income tax for the fiscal year ended June 30, 1933. The first issue is, How should the cost of the leasehold be amortized, i. e., should the cost be recovered by deductions spread over the remaining term of the lease, or over the shorter life of the building on the leased premises, or should a part of the cost be spread in the one way and a part in the other. The only other issue is whether or not the petitioner is entitled to deduct $3,256.82 paid into the "Depreciation Fund", as provided in the lease. The Commissioner has claimed an increased deficiency on the ground that he computed deductions for exhaustion of the leasehold upon an excessive basis. The parties have agreed upon the correct basis and the petitioner has no objection to the adjustment claimed by the Commissioner except as is set forth in its contention under the first issue. The facts have been stipulated and the Board adopts the stipulation as its findings of fact.

The petitioner acquired the unexpired portion of a 99-year lease just prior to the beginning of the taxable year. The lease then had 94 years and 11 months to run. The property subject to the lease was a tract of land, located in the business district of Minneapolis, Minnesota, completely covered by an office building. The lessor was the owner of the land and building at the time the lease was originally executed. The building was 25 years old at the time the lease was acquired by the petitioner and had a remaining life of 30 years. Its value at that time was $705,600, while the value of the land was $293,000. The petitioner's basis for gain or loss and for exhaustion of the leasehold was $258,130.51. The income which the petitioner re-

ceived from the leased premises consisted entirely of rentals received from tenants of the office building. The petitioner, as lessee, was required to pay $55,000 a year as rental to the lessor. The lessee was required to maintain the improvements on the leased premises and was permitted but not required to remove and replace the building under certain circumstances. It also had an option to purchase the leased premises on or before June 1, 1978, for the sum of $1,050,000.

The Commissioner contends that a reasonable allowance for exhaustion of the leasehold for this fiscal year is computed by taking that part of the cost of the lease which bears the same ratio to the total cost of the lease as the twelve months of the fiscal year bear to the total unexpired period of the lease at the beginning of the fiscal year. The petitioner contends that a reasonable allowance for exhaustion of the lease is one-thirtieth of its cost, because that cost must be recovered over the remaining useful life of the building. It contends in the alternative that some portion of the cost of the leasehold should be apportioned to the building and recovered over the useful life of the building. There is no evidence relating to this question except what has been already outlined, together with the terms of the lease. The entire record does not indicate any sound reason for computing the deduction or any part of it with reference to the life of the building, rather than with reference to the unexpired portion of the lease. The petitioner does not have an exhaustible interest in the building. Neither had its predecessor, the original lessee. *Weiss* v. *Wiener*, 279 U. S. 333. Cf. *Cogar* v. *Commissioner*, 44 Fed. (2d) 554. The exhausting property which it owns is the leasehold. There is present no justification for concluding that the useful life of that leasehold will be less than its unexpired term. The method advocated by the Commissioner is the usual method (Regulations 77, arts. 130 and 201) and its use has been approved in a great many cases. *Hotel De France Co.*, 1 B. T. A. 28; *Grosvenor Atterbury*, 1 B. T. A. 169; *Roth Hotel Co.*, 1 B. T. A. 1111; *Columbia Theatre Co.*, 3 B. T. A. 622; *Automatic Exposition Co.*, 11 B. T. A. 1397; *Coronado Realty Co.*, 24 B. T. A. 1022; *City National Bank Bldg.* v. *Helvering*, 98 Fed. (2d) 216, affirming 34 B. T. A. 93. If its use here does not result in a reasonable allowance for exhaustion of the leasehold, at least that fact has not been shown by the petitioner. Some of the cases above cited involved similar long term leases. The capital outlay of the petitioner for the lease will be returned by the method which the Commissioner seeks to apply. *United States* v. *Ludey*, 274 U. S. 295.

The petitioner during the fiscal year deposited $3,256.82 in the "Depreciation Fund" pursuant to the provisions of article five of the lease. The deposit was made by delivering to the lessor certain land

trust certificates which the petitioner had acquired during the year at a cost of $3,256.82 and which were accepted by the lessor in lieu of that amount of cash. The certificates were carried on the petitioner's balance sheet at the end of the year as an asset under the heading of "Securities in depreciation fund." The petitioner did not claim any deduction on its income tax return for the fiscal year on account of this deposit and the Commissioner has not allowed any deduction in determining the deficiency. The amount contained in the depreciation fund did not amount to $750,000 at the time the stipulation was entered into.

Article five is entitled "Depreciation Fund", and contains the statement that depreciation of the premises and the amount of damages to the lessor in case of default will be incapable of exact determination and, in order to avoid the necessity of approximating such amounts, to guarantee the payments to be made by the lessee and to indemnify the lessor against all liabilities in connection with the demised premises, "The Lessee agrees to create and maintain in the hands of the Lessor a special fund to be known as the 'Depreciation Fund' under the following terms and conditions and for the uses, benefits and purposes hereinafter set forth, to-wit:"

(a) The lessee agrees to "deposit" $7,500 with the lessor during each year until the Depreciation Fund shall amount to $750,000 as hereinafter provided.

(b) The lessor will pay interest on any money in its hands belonging to the fund at such rate as interest is paid on funds in checking accounts in trust companies in Cleveland, Ohio, and will invest and reinvest available funds, subject to the request and approval of the lessee, "in obligations of the United States of America or in undivided fractional interests in the fee of the demised premises." The interest and income shall be credited to and become a part of the fund until the fund shall amount to $750,000 as hereinafter provided.

In the event the Lessee exercises its option to purchase the demised premises as hereinabove provided, the Lessor shall, on receipt by him of the option price, pay and deliver to or upon the order of the Lessee, all moneys and/or investments then held by him in said Depreciation Fund.

(c) Further deposits shall cease whenever and as long as the fund (taking investments at their market or face value, whichever is lower) shall amount to $750,000, and thereafter the income from the fund, exclusive of capital gain, shall be paid to the lessee.

(d) The lessee may make deposits in securities.

(e) The lessor may withdraw sums from the fund sufficient to pay the lessee's obligations in case the latter fails to make prompt payments in accordance with the lease.

(f) The lessee is to pay all taxes on the fund or the income therefrom.

(g) Said Depreciation Fund and the investments included therein shall be and remain the property of the Lessee, pledged, transferred and deposited, to and with the Lessor, however, for the purposes herein set forth, and without any right in the Lessee to use, claim or enjoy the same except to the extent and in the manner herein specifically set forth. Upon the termination of this Lease by the expiration of its term, said Fund and the investments included therein shall, without further act or deed by the Lessee, belong to and thereafter be and remain the property of the Lessor in the same manner as is in such cases made and provided with respect to the demised premises, and shall be and constitute liquidated compensation to the Lessor on account of the depreciation in the value of the demised premises during the Lessee's occupancy thereof, and upon the happening of such event the Lessee does hereby sell, convey, assign, transfer and set over unto the Lessor all the right, title or interest of the Lessee in said Fund. Upon the termination of this Lease on account of the default of the Lessee hereunder, said Fund and the securities included therein shall belong to and thereafter be and remain the property of the Lessor in the same manner as if in such case provided with respect to the demised premises, and shall be and constitute liquidated compensation to the Lessor on account of the depreciation in the value of the improvements on the demised premises during the Lessee's occupancy thereof and liquidated compensation to the Lessor for damages resulting from such default, and upon the happening of such event the Lessee does hereby sell, convey, assign, transfer and set over unto the Lessor all the right, title or interest of the Lessee in said Fund. Until the happening of such event as under the provisions of this Lease shall give the Lessor the right and title to said Fund or the right to have recourse thereto, the Lessor shall have only a contingent interest therein as in this Lease provided.

There is a provision elsewhere in the lease that the lessee, upon exercising the option and paying the purchase price of $1,050,000, "shall be entitled to all moneys and/or investments in the Depreciation Fund held by the lessor under the provisions of this lease, and all insurance moneys then in the hands of the Trustees for Insurance hereinafter named."

Another provision is that the lessee shall maintain and keep the improvements in good condition, keep the improvements insured, and have the use of any insurance proceeds necessary to restore the premises. If the premises are taken for public use, such appropriation is to constitute an election on the part of the lessee to exercise its option, and upon payment of the option price the lessee is to have all awards, together with the depreciation fund and insurance. The lessee is to pay all taxes. The lessee, while not in default, has the right to remove improvements for the purpose of replacing them with other improvements upon putting up proper security to protect the lessor. Any building erected is to be a proper one for the location, and is to cost not less than $1,000,000. Improvements are to immediately become a part of the realty.

No improvements were made by the petitioner.

The petitioner contends that it is entitled to deduct the amount of $3,256.82 under section 23 (a) of the Revenue Act of 1932, either as additional rent or as an ordinary and necessary expense. That section provides for the deduction of all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including "rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity." The annual payment of $55,000 which the petitioner was required to make to the lessor was clearly rental for the use of the property during the taxable year. But the amount here in question was quite different. It was not paid to the lessor absolutely for the use of the property during the taxable year. It was not paid to the lessor absolutely for any purpose. It was not paid at all. Neither did it represent an accrual. Instead, it was deposited with the lessor to be made a part of a fund which still belonged to the lessee. The right of the lessor to that fund was entirely contingent and depended upon the possibility of a default by the lessee in some payment or upon the failure of the lessee to exercise its option on or before June 1, 1978. The petitioner would recover possession of the fund upon exercising the option and purchasing the property. Meanwhile, the fund remains as property of the lessee, forming a guarantee to the lessor. The fund may possibly go to the lessor in the future. It may go to the lessor piecemeal in order to make up payments on which the petitioner has defaulted. Deductions for such possible use of the fund will have to be determined in the light of the circumstances under which the use is made. Cf. *Estate of George E. Barker*, 13 B. T. A. 562; *Virginia Iron Coal & Coke Co.*, 37 B. T. A. 195. The fund may go to the lessor in its entirety on June 2, 1978, but, if so, that will be the first date upon which the exact nature of the payments can be determined. Meanwhile, the petitioner is not entitled to deduct deposits in the fund. If, as may happen, the fund is returned to the petitioner, then the impropriety of the allowance of any deduction as an ordinary and necessary expense would clearly appear.

Although no further reason is necessary for disallowing this deduction, nevertheless there are other reasons why it may not be allowed. Section 23 (a) allows a deduction for rents or other payments required to be made as a condition to the continued use of property only in case the taxpayer has not taken and is not taking title to the property and has no equity in the property. The lease agreement

provides expressly that the fund and the investments included in it shall be the property of the lessee, and it further provides that those funds may be invested in "undivided fractional interests in the fee of the demised premises." The record does not show whether or not any of the fund has been invested in such fractional interests. But regardless of whether or not such investments have been made, nevertheless they may be made, and under such circumstances no deduction would be proper under section 23 (a).

*Decision will be entered under Rule 50.*