TOM F. BAKER III AND BILLIE BAKER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87395. Filed April 4, 1962.

10

*James E. Reeves, Esq.*, for the petitioners.
*Edward E. Pigg, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge:* Respondent determined a deficiency in income tax for the calendar year 1956 in the amount of $18,375.14.

The only issue remaining is whether petitioners realized ordinary income by operation of section 1239, I.R.C. 1954, or long-term capital gain from the cash sale in 1956 by petitioners to a family-owned corporation of a 10-year lease on farmland commencing January 1, 1957, which lease petitioners as lessees had acquired at no cost in 1955.

Another issue relating to the rental value of a dwelling house occupied by petitioners has been settled by stipulation and effect will be given thereto in the recomputation to be made under Rule 50.

All the facts were stipulated and are so found.

Petitioners are husband and wife residing in the State of Missouri. Their mailing address is in care of Ward & Reeves, Attorneys at Law, Caruthersville, Missouri.

Petitioners duly filed their joint Federal income tax return for the taxable year ending December 31, 1956, with the director of internal revenue at St. Louis, Missouri.

A lease was executed on April 30, 1955, by W. H. Lindley and Olga J. Lindley, his wife, leasing to petitioners as lessees for a term of 10 years, commencing on January 1, 1957, and expiring on December 31, 1966, approximately 872 acres of farmland located in Stoddard County, Missouri, at an annual cash rental of $7,000.

The above-described lease was transferred by petitioners to the Trailback Plantation, Inc., a corporation, for the sum of $30,000 paid by the corporation to petitioners on December 31, 1956. Trailback Plantation, Inc., assumed all the obligations of the lessees in the said lease contract, including the obligation to pay the annual cash rental of $7,000.

The ownership of the outstanding shares of Trailback Plantation, Inc., at all times material herein was as follows:

| | Shares |
|---|---|
| Tom F. Baker III | 645 |
| T. F. Baker | 1 |
| Billie Baker | 4 |
| Total | 650 |

On its Federal income tax return for the fiscal year ended April 30, 1958, Trailback Plantation, Inc., claimed as a deduction from gross

income by reason of the ownership of the Lindley Farm lease the amount of $3,000 as lease amortization.

In their joint return for 1956 petitioners reported a long-term capital gain of $30,000 from the sale of "Lease for 10 years sold to Trailback Plantation, Inc., sold at fair market value."

In a statement attached to the deficiency notice, respondent "determined that such gain is taxable as ordinary income" by operation of section 1239, I.R.C. 1954.[1]

Petitioners concede that all the requisite provisions of section 1239 necessary to tax the admitted gain of $30,000 as ordinary income are present, except the provision contained in subsection (b). They contend that the "property" here in question, namely, the leasehold, is not "property which in the hands of the transferee is property of a character which is subject to the allowance for depreciation provided in section 167."[2] The respondent contends that the leasehold is the kind of property described in subsection (b) and that, therefore, his determination of this question should be sustained.

Petitioners, in contending that the leasehold is *not* property which in the hands of the transferee (Trailback Plantation, Inc.) is of a character subject to the allowance for depreciation provided in section 167, argue instead that the leasehold *is* property subject to an allowance for *amortization* deductible under section 162, I.R.C. 1954,[3] as interpreted by section 1.162–11, Income Tax Regs.[4]

---

[1] SEC. 1239. GAIN FROM SALE OF CERTAIN PROPERTY BETWEEN SPOUSES OR BETWEEN AN INDIVIDUAL AND A CONTROLLED CORPORATION.

(a) TREATMENT OF GAIN AS ORDINARY INCOME.—In the case of a sale or exchange, directly or indirectly, of property described in subsection (b)—

(1) between a husband and wife; or

(2) between an individual and a corporation more than 80 percent in value of the outstanding stock of which is owned by such individual, his spouse, and his minor children and minor grandchildren;

any gain recognized to the transferor from the sale or exchange of such property shall be considered as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231.

(b) SECTION APPLICABLE ONLY TO SALES OR EXCHANGES OF DEPRECIABLE PROPERTY.—This section shall apply only in the case of a sale or exchange by a transferor of property which in the hands of the transferee is property of a character which is subject to the allowance for depreciation provided in section 167.

[2] SEC. 167. DEPRECIATION.

(a) GENERAL RULE.—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

(1) of property used in the trade or business, or

(2) of property held for the production of income.

[3] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\*     \*     \*     \*     \*     \*     \*

(3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

[4] Sec. 1.162–11, Rentals.

(a) *Acquisition of a leasehold.* If a leasehold is acquired for business purposes for a specified sum, the purchaser may take as a deduction in his return an aliquot part of such sum each year, based on the number of years the lease has to run. \* \* \*

On the surface it would appear that petitioners' contention and argument are not without some merit. However, we do not believe it was the intention of Congress in enacting section 1239 to permit the result petitioners now seek. Section 1239 had its counterpart in section 328 of the Revenue Act of 1951 which added subsection (o) to section 117 of the 1939 Code. The "intent" Congress had in enacting section 328 is fully explained in H. Rept. No. 586, 82d Cong., 1st Sess., 1951-2 C.B. 357, 376, which is set out in part in the margin,[5] and in the Joint Committee Staff Summary of Provisions of the Revenue Act of 1951 (sec. 328) as agreed to by the conferees, 1951-2 C.B. 287, 314, which is substantially the same as the House report.

Our solution of this problem necessarily turns on the narrow question whether a leasehold is or is not "property which in the hands of the transferee is property of a character which is subject to the allowance for depreciation provided in section 167." Sec. 1239(b), *supra*. Respondent argues in the affirmative and petitioners, relying upon the respondent's regulations (footnote 4, *supra*), argue in the negative.

In an early case, *Grosvenor Atterbury*, 1 B.T.A. 169, we had substantially the same narrow question except that the parties argued in the reverse order. In this case the taxpayer, an individual, on May 1, 1903, acquired a 19-year leasehold of real property at a cost of $33,804.80 which, on March 1, 1913, had a conceded value of $58,500. In holding that the Commissioner erred in not allowing the taxpayer to deduct as *depreciation* for each of the taxable years before us an amount based on the March 1, 1913, value of the leasehold, we said in part:

The Commissioner contends that the depreciation claimed by the taxpayer is not a proper deduction * * *. In making this contention, the Commissioner

---

[5] Section 310 [enacted as section 328] of this bill is intended to forestall the practice of selling depreciable assets to controlled corporations in order to obtain the substantial tax benefits available under existing law. This practice, which is reported by the Bureau of Internal Revenue to be of growing importance, may be illustrated as follows: Assume that a husband and wife own and operate a corporation engaged in retail trade, that they also own as individuals the building used by this corporation and that the current value of the building is well in excess of its adjusted basis. If the building is sold to the corporation, a capital-gains tax will ordinarily be paid, but the building then has, in the hands of the corporation, an adjusted basis which is greater than the basis in the hands of the individual shareholders by the amount of the gain realized on the sale to the corporation. The property being depreciable the corporation will then be able to write off the increase in the adjusted basis over the remaining life of the building. The resulting additional depreciation charges are, of course, an offset to ordinary income. Thus, in effect, the immediate payment of a capital-gains tax has been substituted for the elimination, over a period of years, of the corporate income taxes on an equivalent amount. The substantial differential between the capital-gains rate and the ordinary rates makes such a substitution highly advantageous when the sale may be carried out without loss of control over the asset because the corporation to which the asset is sold is controlled by the individuals who make the sale.

Section 310 [enacted as section 328] of this bill eliminates the tax advantage from such transactions by denying capital-gains treatment to the transferor with respect to sales or exchanges of depreciable property * * * between an individual and a corporation, more than half [enacted as more than 80 percent] of the outstanding stock of which is owned by or for him directly or indirectly. * * *

asserts that he has *consistently held that a lessee is not entitled to an allowance for depreciation* * * * but, if a leasehold was acquired for business purposes, the purchaser has been allowed as a deduction in his income tax return an aliquot part of the purchase price each year, based on the number of years the lease has to run. * * * *This concession is artificial and does not recognize the right conferred upon the taxpayer by the revenue acts.* It does not concede the taxpayer the right of *exhaustion* which is his under the law. * * * When money is used to purchase a class of property designated as a leasehold, it is nevertheless a capital investment *and can not be classified as an advance payment on rent.* [Emphasis supplied.]

Notwithstanding our holding in the *Atterbury* case, the respondent has in all of his subsequent regulations retained the provision regarding leaseholds substantially as set out in our footnote 4, *supra*.[6] As an explanation of this it may be observed that in reality, from a pure *deduction* standpoint, it makes no difference in tax liability whether a deduction from gross income is called a business expense and allowed under section 162 or depreciation and allowed under section 167. In fact, the cases show that the term given the allowance has been indiscriminately referred to sometimes as expense or amortization[7] and at other times as exhaustion or depreciation.[8]

Nevertheless, we think when Congress enacted section 1239 of the 1954 Code and its counterpart in section 328 of the Revenue Act of 1951, referred to previously herein, it fully intended to cover situations such as we have here. As stated by the court in *Emery* v. *Commissioner*, 166 F. 2d 27, 30 (C.A. 2, 1948):

The key concept in construing a statute is, of course, what we call the legislature's intention; and "that intention is to be ascertained, not by taking the word or clause in question from its setting and viewing it apart, but by considering it in connection with the context, the general purposes of the statute in which it is found, the occasion and circumstances of its use, and other appropriate tests for the ascertainment of the legislative will." *Helvering* v. *Stockholms Enskilda Bank*, 293 U.S. 84, 93, 94, 55 S. Ct. 50, 54, 79 L. Ed. 211. * * *

Therefore, when Congress, in section 1239(b), footnote 1, *supra*, referred to "property of a character which is subject to the allowance for depreciation" we think that by using the word "character" it intended to include leasehold property of the kind we have here. The phrase just quoted has appeared in other parts of our revenue

---

[6] See art. 109 of Regs. 62; art. 110 of Regs. 65 and 69; art. 130 of Regs. 74 and 77; art. 23(a)–10 of Regs. 86, 94, and 101; sec. 19.23(a)–10 of Regs. 103; sec. 29.23(a)–10 of Regs. 111; and sec. 39.23(a)–10 of Regs. 118.

[7] *Fort Wharf Ice Co.*, 23 T.C. 202.

[8] *Powell Coal Co.*, 12 B.T.A. 492, 498 (issue 2); *Minneapolis Security Building Corporation*, 38 B.T.A. 1220; *Century Electric Co.*, 15 T.C. 581, 595, affd. 192 F. 2d 155 (C.A. 8, 1951), certiorari denied 342 U.S. 954. In the latter case the Eighth Circuit court said: "What the petitioner has done is to exchange the foundry property having an adjusted basis of $531,710.97 on December 1, 1943, for a leasehold and $150,000 in cash. Its capital investment is in the leasehold and not its constituent properties. Accordingly, we agree with the Tax Court that petitioner is entitled to depreciation on the leasehold. The basis for depreciation of the leasehold on December 1, 1943, is, therefore, $381,710.97 under section 113(a)(6) of the revenue code, deductible over the term of the lease."

statutes. In defining the term "capital assets" in section 117(a)(1) of the Revenue Act of 1938, Congress provided that the term did not include "property, used in the trade or business, *of a character which is subject to the* allowance for depreciation." (Emphasis supplied.) In *John D. Fackler*, 45 B.T.A. 708, affd. 133 F. 2d 509, 512 (C.A. 6, . 943), we held that a certain *leasehold* was not a capital asset because it was "property, used in the trade or business, *of a character which is subject to the allowance for depreciation.*"[9] (Emphasis supplied.) If the leasehold involved in the *Fackler* case was property "of a character which is subject to the allowance for depreciation" as that phrase was used in section 117(a)(1) of the Revenue Act of 1938, we know of no reason why the leasehold here involved should not likewise be considered as property "of a character which is subject to the allowance for depreciation" as that phrase is used in section 1239(b) of the 1954 Code.

We can see no practical difference in principle between an allowance for the exhaustion of a leasehold and one for the exhaustion of a patent. And yet the Commissioner has seen fit to construe the allowance for exhaustion of a leasehold as amortization under section 162[10] and the exhaustion of a patent as depreciation under section 167.[11] In *Royce Kershaw*, 34 T.C. 453, we held that the gain from the sale in 1956 of a patent by the taxpayer to a family-owned corporation was taxable as ordinary income by operation of section 1239, *supra*. We think the same holding should be made as to the gain from the sale of a leasehold, as in the instant case, having previously held that a leasehold is "property of a character which is subject to the allowance for depreciation." *John D. Fackler*, *supra; Grosvenor Atterbury*, *supra*.

We, therefore, hold that the gain of $30,000 realized by petitioners in 1956 is taxable to them as ordinary income by operation of section 1239 of the Internal Revenue Code of 1954 rather than as long-term capital gain as reported by them in their income tax return. Because of the stipulated issue,

*Decision will be entered under Rule 50.*

Reviewed by the Court.

[9] In our Opinion we said:
"In view of the foregoing, it is our opinion that the use made by the petitioner of the leasehold in 1938 brings it within the meaning of property 'used in the trade or business' as that phrase is employed in section 117(a)(1) and 23(l), of the Revenue Act of 1938 *and that it is property of a character subject to the allowance for depreciation provided in the latter section.* It accordingly follows that the leasehold was not a capital asset within the definition of section 117(a),(1) and that taxation of the gain resulting from the sale thereof is not controlled by the capital gain provisions of the act." (Emphasis supplied.)

[10] See footnote 4.

[11] Sec. 1.167(a)-3 of the Income Tax Regulations provides:
"If an intangible asset is known from experience or other factors to be of use in the business or in the production of income for only a limited period, the length of which can be estimated with reasonable accuracy, such an intangible asset may be the subject of a depreciation allowance. Examples are patents and copyrights. * * *"