John P. McEnery and Margaret McEnery v. Commissioner.
McEnery v. Commissioner
Docket No. 755-66.
United States Tax Court
T.C. Memo 1967-213; 1967 Tax Ct. Memo LEXIS 46; 26 T.C.M. (CCH) 1060; T.C.M. (RIA) 67213; October 30, 1967
*46 Petitioner in 1963 was the sole owner of a leasehold of property located in San Jose, California. In that year petitioner relinquished the remaining term of that lease for $11,000 to the lessor-corporation, 89.9 percent of the stock of which was at that time owned by petitioner, his spouse, and minor children. Petitioners in their joint income tax return treated the $11,000 as long-term capital gain. Held, the amount paid for the 950-66, 952-66, and 953-66. Decision will be entered for the relinquishment of the lease is ordinary income to petitioners pursuant to section 1239, I.R.C. 1954. James W. Foley, 900 N. First St., San Jose, Calif., for the petitioners. Joseph Nadel, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Respondent determined a deficiency in the petitioners' income tax for the calendar year 1963 in the amount of $1,189.77. The only issue in the case is whether the payments received by petitioner for the relinquishment of his leasehold constitute capital gain or are to be treated as ordinary income pursuant to section 1239 of the Internal Revenue Code of 1954. [1] *47 Findings of Fact All of the facts having been stipulated they are so found. Petitioners are husband and wife and reside in San Jose, California. They filed their 1963 joint income tax return with the district director of internal revenue at San Francisco, California. Since Margaret McEnery is a party to this proceeding only because she filed a joint income tax return for the year involved, John P. McEnery will hereinafter be referred to as petitioner. On October 19, 1951, a lease was entered into by The Farmers Union, a California corporation, lessor, and The Farmers Union Hardware Company, a copartnership, consisting of Robert F. Benson, Jane D. Sherburne, C. E. Righter, Herbert S. Stark, Alden French, Margaret O. Dean Haworth, and petitioner, lessees. In the course of time petitioner acquired the interest of the other partners in the lease so that during the taxable year 1963 he was the sole owner of this leasehold located at Santa Clara and San Pedro Streets, San Jose, California. Due to a restriction contained in the lease with respect to the assignment of the lease, petitioner was prevented from subletting the subject premises. Petitioner, in 1963, relinquished the remaining *48 term of the leasehold for $11,000 to The Farmers Union, in which petitioner, his spouse, and minor children owned 89.9 percent of the stock. The Farmers Union is presently amortizing the cost of acquiring the leasehold from petitioner. Petitioners, in their 1963 joint income tax return, treated the $11,000 as long-term capital gain. Respondent, however, has included that entire amount as ordinary income under the provisions of section 1239 of the 1954 Code. Opinion The sole issue for decision in this case is whether petitioners may treat the sum paid them by the lessor for the cancellation of their lease as long-term capital gain. This in turn hinges on whether section 1239[2] *49 applies to this transaction. Petitioners' argument is that section 1241 [3] *50 rather than section 1239 applies, and that that section provides for capital gain treatment on the cancellation of a lease. This argument must fail, however, because it is based on an erroneous conception of the scope and effect of section 1241 and of its relationship to section 1239. Section 1241 does not render the proceeds received for the cancellation of a lease taxable as capital gain. This section merely provides that "Amounts received by a lessee for the cancellation of a lease, * * * shall be considered as amounts received in exchange for such lease." In order for the amount received by petitioner herein to be treated as a long-term capital gain, it must be shown that the lease was a capital asset; [4] and on this point sec. 1.1241-1(a), Income Tax Regs. , states: "section 1241 has no application in determining whether or not a lease * * * is a capital asset, even though its cancellation qualifies as an exchange under section 1241." It is at this point, i.e., determining whether the lease is a capital asset, that section 1239 becomes relevant. That section provides that in the case of a sale or exchange of certain depreciable property between an individual and a controlled corporation, [5] any gain recognized to the transferor on such sale or exchange shall be considered as gain from the sale or exchange of a noncapital asset, i.e., ordinary income. *51 Since in this case the parties concede that the corporation-lessor was a controlled corporation as defined in section 1239, and since, as petitioners themselves argue, section 1241 renders the cancellation of a lease an exchange of such lease for the amount received therefor, respondent's determination is correct if the cancellation of a lease gives rise to a situation in which there is a sale or exchange of property which in the hands of the recipient is "property of a character which is subject to the allowance for depreciation provided in section 167." [6] Although petitioners in their brief concede this point, the Court feels that some discussion of the question of whether *52 the relinquishment of a leasehold is a sale or exchange of depreciable property within the purview of section 1239(b) is merited. It is well established that the cancellation of a leasehold by a lessor transfers valuable property rights to the lessor. As the Court said in Harriet B. Borland 27 B.T.A. 538, 542 (1933), An amount paid by a lessor as consideration for the cancellation of a lease represents the cost to the lessor of acquiring a valuable property right, namely, the right to the possession, enjoyment and use of his property for the remaining unexpired term of the lease, * * * It is also well settled that the amount paid for the relinquishment of a leasehold may be amortized under section 162. Trustee Corporation, 42 T.C. 482 (1964). Thus, the resolution of the question at hand turns on whether property subject to amortization pursuant to section 162 comes within the category "property of a character which is subject to the allowance for depreciation provided in section 167" described in section 1239(b). Tom F. Baker III, 38 T.C. 9 (1962), answered this question in the affirmative as follows: As an explanation of this [i.e., respondent's treatment of exhaustion *53 of a leasehold as amortization under section 162 rather than as depreciation under section 167] it may be observed that in reality, from a pure deduction standpoint, it makes no difference in tax liability whether a deduction from gross income is called a business expense and allowed under section 162 or depreciation and allowed under section 167. In fact, the cases show that the term given the allowance has been indiscriminately referred to sometimes as expense or amortization n7 and at other times as exhaustion or depreciation. n8 Nevertheless, we think when Congress enacted section 1239 * * * it fully intended to cover situations such as we have here [i.e., sale of a leasehold interest]. * * *
Therefore, when Congress in section 1239(b), * * * referred to "property of a character which is subject to the allowance for depreciation" we think that by using the word "character" it intended to include leasehold property of the kind we have here. * * * [Footnotes omitted.] In the Baker case, supra, a sale of a lessee's interest to a third party rather than relinquishment of a lessee's interest to the original lessor was involved. However, in light of our conclusion that a relinquishment *54 of a lease gives rise to a valuable property right which is subject to amortization, just as does the sale of a lease, we conclude that the relinquishment of a leasehold is a sale or exchange of depreciable property within the purview of section 1239(b). Accordingly, we hold that the $11,000 received by petitioners for cancellation of their lease gives rise to ordinary income pursuant to section 1239, and not to long-term capital gain. Decision will be entered for the respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954 unless otherwise indicated.
2. SEC. 1239. GAIN FROM SALE OF CERTAIN PROPERTY BETWEEN SPOUSES OR BETWEEN AN INDIVIDUAL AND A CONTROLLED CORPORATION. (a) Treatment of Gain as Ordinary Income. - In the case of a sale or exchange, directly or indirectly, of property described in subsection (b) - (1) between a husband and wife; or (2) between an individual and a corporation more than 80 percent in value of the outstanding stock of which is owned by such individual, his spouse, and his minor children and minor grandchildren; any gain recognized to the transferor from the sale or exchange of such property shall be considered as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231. (b) Section Applicable Only to Sales or Exchanges of Depreciable Property. - This section shall apply only in the case of a sale or Exchanges of Depreciable Property. - This section shall apply only in the case of a sale or exchange by the transferor of property which in the hands of the transferee is property of a character which is subject to the allowance for depreciation provided in section 167.↩
3. SEC. 1241. CANCELLATION OF LEASE OR DISTRIBUTOR'S AGREEMENT. Amounts received by a lessee for the cancellation of a lease, or by a distributor of goods for the cancellation of a distributor's agreement (if the distributor has a substantial capital investment in the distributorship), shall be considered as amounts received in exchange for such lease or agreement.
4. SEC. 1222. OTHER TERMS RELATING TO CAPITAL GAINS AND LOSSES. For purposes of this subtitle - * * *
(3) Long-Term Capital Gain. - The term "long-term capital gain" means gain from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such gain is taken into account in computing gross income. ↩
5. Control is defined here as ownership of more than 80 percent of the value of the outstanding stock by the individual, his spouse, and his minor children and minor grandchildren. Sec. 1239(a)↩.
6. Sec. 1239(b)↩.